**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | Case No. _____ |
| v. ) | **COMPLAINT** |
| NORFOLK SOUTHERN RAILWAY ) | |
| COMPANY ) | |
| Defendant. ) | |

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this complaint and alleges as follows:

### NATURE OF THE ACTION

1.     This is a civil action brought against the Norfolk Southern Railway Company ("Defendant") seeking injunctive relief and assessment of civil penalties for violations of the Clean Water Act, 33 U.S.C. §§ 1251–1387 ("CWA"), for the discharge of chlorine and oil into navigable waters of the United States, and of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601–9675(c) ("CERCLA") for failure to immediately notify the National Response Center of a reportable release of chlorine.

### JURISDICTION, AUTHORITY AND VENUE

2.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1355; Sections 309(b), 311(b)(7)(E) and 311(n) of the CWA, 33 U.S.C. §§ 1319(b), 1321(b)(7)(E) and 311(n); and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b).

3.     Authority to bring this action is vested in the United States Department of Justice by Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

4.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1395(a); Sections 309(b) and 311(b)(7)(E) of the CWA, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E); and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because Defendant does business in this District and the alleged violations occurred in this District.

## DEFENDANT

5.     Defendant Norfolk Southern Railway Company is a corporation organized and existing under the laws of the Commonwealth of Virginia.  Defendant is a subsidiary of the Norfolk Southern Corporation.

## STATUTORY BACKGROUND

6.     Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), prohibits the discharge of oil or hazardous substances into or upon the navigable waters of the United States or adjoining shorelines in such quantities as the President determines may be harmful to the public health or welfare or the environment of the United States.

7.     Pursuant to Sections 311(b)(2)(A) and (b)(4) of the CWA, 33 U.S.C. §§ 1321(b)(2)(A) and (b)(4), EPA, acting through its delegated authority under Executive Order No. 11735, 38 Fed. Reg. 21243 (Aug. 7, 1973), has determined by regulation that chlorine is a hazardous substance with a reportable quantity of 10 pounds for purposes of Section 311 of the CWA.  40 C.F.R. §§ 116.4 and 117.3.

8.     Pursuant to Section 311(b)(4) of the CWA, 33 U.S.C. § 1321(b)(4), EPA, acting through its delegated authority under Executive Order No. 11735, 38 Fed. Reg. 21243 (Aug. 7, 1973), has determined by regulation that the quantities of oil that may be harmful to the public health or welfare or the environment of the United States include discharges of oil that, inter alia, cause a film or sheen upon or discoloration of the surface of the water.  40 C.F.R. § 110.3.

9.     Pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), and the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note,

2

as implemented at 69 Fed. Reg. 7,121 (Feb. 13, 2004), any person who is the owner or operator of an onshore facility from which oil or a hazardous substance is discharged in violation of Section 311(b)(3) of the CWA shall be subject to a civil penalty of up to $32,500 per day or up to $1,100 per barrel of oil or unit of reportable quantity of a hazardous substance discharged. 40 C.F.R. § 19.

10.    Pursuant to Section 311(b)(7)(D) of the CWA, 33 U.S.C. § 1321(b)(7)(D), and the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as implemented at 69 Fed. Reg. 7,121 (Feb. 13, 2004), the owner or operator of an onshore facility whose gross negligence or wilful misconduct results in a violation of Section 311(b)(3) of the CWA shall be subject to a civil penalty of not less than $130,000 and not more than $4,300 per barrel of oil or unit of reportable quantity of a hazardous substance discharged. 40 C.F.R. § 19.

11.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant by any person except as in compliance with the CWA. Section 502 of the CWA defines "discharge of a pollutant" as any addition of any pollutant to navigable waters from any point source, 33 U.S.C. § 1362(12); "point source" as any discernible, confined and discrete conveyance, including containers and rolling stock, from which pollutants are or may be discharged, 33 U.S.C. § 1362(14); and "navigable waters" as the waters of the United States, 33 U.S.C. § 1362(7).

12.    Pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), EPA is authorized to bring a civil action seeking appropriate injunctive relief and civil penalties for violations of Section 301 of the CWA.

13.    Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), requires any person in charge of an onshore facility, as soon as he has knowledge of a release of a hazardous substance from that facility in reportable quantities, to immediately notify the National Response Center of that release.

14.    Pursuant to Section 109(c)(1) of CERCLA, 42 U.S.C. § 9609(c)(1), and the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as

3

implemented at 69 Fed. Reg. 7,121 (Feb. 13, 2004), a civil penalty of up to $32,500 per day for violations occurring on or after March 16, 2004, may be assessed for each violation of Section 103(a) of CERCLA.  40 C.F.R. § 19.

## GENERAL ALLEGATIONS

15.    Defendant owns and operates a freight railroad, with approximately 21,200 miles of track in 22 eastern states, the District of Columbia, and Canada.  Defendant also owns and/or operates trains, including engines and tank cars, that operate on its track.

16.    Defendant owns and operates tracks that pass through Graniteville, South Carolina.  Defendant also owns and/or operates trains, including engines and tank cars, that operate on the portions of its track that pass through Graniteville.  Graniteville is located within the unsignaled or "dark" territory of Defendant's rail system, in which tracks are equipped with no automated warning system that would notify engineers of upcoming track conditions such as improperly lined switches.

17.    At 2:39 a.m. on January 6, 2005, Norfolk Southern Train 192 ("Train 192") was traveling through Graniteville at approximately 47 miles per hour when it encountered an improperly lined switch that diverted it from the main line onto an industrial siding, where the train collided head on with Norfolk Southern Train P-22 ("Train P-22"), which was parked and unoccupied at the time of the collision.

18.    The collision derailed both of Train 192's locomotives as well as 16 of its 42 freight cars.  Among the derailed cars were three tank cars containing chlorine, one of which was breached during the accident.  Chlorine discharged from the breached tank car.

19.    Chlorine discharged from the breached tank car killed Train 192's engineer and eight other people in surrounding buildings and homes.  The discharged chlorine also caused hundreds of cases of respiratory distress and required the evacuation of over 5,400 people living or working in the vicinity of the derailment site.

20.    Chlorine discharged from the breached tank car settled upon and was absorbed into Horse Creek, its tributaries and their adjoining shorelines, injuring and killing fish and vegetation.

4

21.    During the collision the fuel tank on Train 192's second engine ruptured and the fuel tank on Train P-22's engine was punctured by debris. The two breached fuel tanks released diesel fuel into Horse Creek, its tributaries and their adjoining shorelines.

22.    At all times pertinent to this action, Defendant was a "person" within the meaning of Sections 311(a)(7) and 502(5) of the CWA, 33 U.S.C. §§ 1321(a)(7) and 1362(5), and Section 101(21) of CERCLA, 33 U.S.C. § 9601(21).

23.    At all times pertinent to this action, Defendant was the owner and/or operator of Trains 192 and P-22, including all engines and tank cars, within the meaning of Section 311(a)(6) of the CWA, 33 U.S.C. § 1321(a)(6).

24.    At all times pertinent to this action the engines and tank cars of Trains 192 and P-22 were "onshore facilities" within the meaning of Section 311(a)(10) of the CWA, 33 U.S.C. § 1321(a)(10), and Section 101(18) of CERCLA, 42 U.S.C. § 9601(18), and "point sources" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

25.    Horse Creek and its tributaries are "navigable waters of the United States" within the meaning of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3); and "navigable waters" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

**FIRST CLAIM FOR RELIEF**
**(Discharge of Chlorine in Violation of Section 311(b)(3) of the CWA)**

26.    Paragraphs 1 through 25 are realleged and incorporated herein by reference.

27.    Chlorine is a "hazardous substance" within the meaning of Section 311 of the CWA. 33 U.S.C. § 1321(a)(14); 40 C.F.R. § 116.4.

28.    Defendant's release of chlorine from Train 192's breached tank car was a "discharge" within the meaning of Section 311(a)(2) of the CWA, 33 U.S.C. § 1321(a)(2).

29.    Beginning January 6, 2005, Defendant discharged chlorine in excess of the reportable quantity of 10 pounds into or upon Horse Creek, its tributaries and their

5

adjoining shorelines in violation of Section 311(b)(3) of the CWA, 33 U.S.C.

§ 1321(b)(3). Defendant is accordingly liable for a civil penalty of up to $32,500 per day

of violation or an amount up to $1,100 per unit of reportable quantity of chlorine

discharged. 33 U.S.C. § 1321(b)(7)(A). To the extent that Defendant's discharge of

chlorine was the result of gross negligence or wilful misconduct, Defendant is liable for a

civil penalty of not less than $130,000 and not more than $4,300 per unit of reportable

quantity of chlorine discharged. 33 U.S.C. § 1321(b)(7)(D).

### SECOND CLAIM FOR RELIEF
**(Discharge of Oil in Violation of Section 311(b)(3) of the CWA)**

30.    Paragraphs 1 through 25 are realleged and incorporated herein by reference.

31.    Diesel fuel is "oil" within the meaning of CWA Section 311(a)(1),

33 U.S.C. § 1321(a)(1).

32.    The release of diesel fuel from the engines of Train 192 and P-22 was a

"discharge" within the meaning of Section 311(a)(2) of the CWA, 33 U.S.C.

§ 1321(a)(2).

33.    Beginning January 6, 2005, Defendant discharged oil in a quantity

sufficient to cause a sheen upon or discoloration of the surface of the water into or upon

Horse Creek, its tributaries and their adjoining shorelines in violation of Section

311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3). Defendant is accordingly liable for a

civil penalty of up to $32,500 per day of violation or an amount up to $1,100 per barrel of

oil discharged. 33 U.S.C. § 1321(b)(7)(A). To the extent that Defendant's discharge of

oil was the result of gross negligence or wilful misconduct, Defendant is liable for a civil

penalty of not less than $130,000 and not more than $4,300 per barrel of oil discharged.

33 U.S.C. § 1321(b)(7)(D).

### THIRD CLAIM FOR RELIEF
**(Discharge of Pollutants in Violation of Section 301(a) of the CWA)**

34.    Paragraphs 1 through 25 are realleged and incorporated herein by reference.

6

35.    Chlorine is a "pollutant" within the meaning of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

36.    Defendant's release of chlorine from Train 192's breached tank car was a "discharge of [a] pollutant" within the meaning of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

37.    Diesel fuel is a "pollutant" within the meaning of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

38.    Defendant's release of diesel fuel from the engines of Train 192 and P-22 was a "discharge of [a] pollutant" within the meaning of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

39.    Defendant discharged chlorine and diesel fuel into Horse Creek and its tributaries in violation of Section 301(a) of the CWA, 33 U.S.C. 1311(a).  Defendant is accordingly subject to appropriate injunctive relief pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

**FOURTH CLAIM FOR RELIEF**
**(Failure to Immediately Notify the National Response Center of a Release of Chlorine in Reportable Quantities in Violation of Section 103(a) of CERCLA)**

40.    Paragraphs 1 through 25 are realleged and incorporated herein by reference.

41.    At all times pertinent to this action Defendant was a "person in charge" of Train 192 and its tank cars within the meaning of Section 103(a) of CERCLA, 42 U.S.C. § 9603(a).

42.    Chlorine is a hazardous substance with a reportable quantity of 10 pounds for purposes of Section 103(a) of CERCLA.  40 C.F.R. § 302.4.

43.    The discharge of chlorine from Train 192's breached tank car was a "release," as defined in Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), in excess of 10 pounds.

44.    Defendant did not immediately notify the National Response Center as soon as it had knowledge that a release of chlorine in excess of 10 pounds from one of Train 192's tank cars had occurred, in violation of Section 103(a) of CERCLA, 42 U.S.C.

7

§ 9603(a). Defendant is accordingly liable for a civil penalty of up to $32,500 per day of violation. 42 U.S.C. § 9609(c)(1).

### PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations set forth above, the United States of America requests that this Court:

1. Impose civil penalties on Defendant, pursuant to Section 311(b)(7) of the CWA, in an amount of up to $1,100 per unit of reportable quantity of chlorine discharged, and to the extent the discharge was the result of gross negligence or wilful misconduct by the Defendant, of up to $4,300 per unit of reportable quantity of chlorine discharged;

2. Impose civil penalties on Defendant, pursuant to Section 311(b)(7) of the CWA, in an amount of up to $1,100 per barrel of oil discharged, and to the extent the discharge was the result of gross negligence or wilful misconduct by the Defendant, of up to $4,300 per barrel of oil discharged;

3. Impose appropriate injunctive relief pursuant to Section 309(b) of the CWA as may be necessary to prevent, detect and mitigate further discharges in violation of Section 301(a) of the CWA;

4. Impose a civil penalty on Defendant in an amount of up to $32,500 per day of violation for failure to immediately notify the National Response Center of a reportable release of chlorine in violation of Section 103(a) of CERCLA; and

5. Grant such other and further relief as the Court deems just and proper.


Respectfully submitted,


RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


8

PATRICIA L. HURST
DAVIS H. FORSYTHE
Trial Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 616-6528

KEVIN F. McDONALD
Acting United States Attorney
District of South Carolina

R. EMERY CLARK (Bar No. 1183)
Assistant United States Attorney
District of South Carolina
1441 Main Street, Suite 500
Columbia, S.C. 29201
Phone: 803-929-3085
Fax:    803-252-2759
Email: emery.clark@usdoj.gov

OF COUNSEL:

JOAN REDLEAF DURBIN
Senior Attorney
U.S. Environmental Protection Agency, Region 4
61 Forsyth Street, S.W.
Atlanta, GA 30303

CHERYL T. ROSE
Senior Attorney
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

9