**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

_____  )
UNITED STATES OF AMERICA,         )
                                  )
    Plaintiff,                    )
                                  )  Case No. 1:08-cv-01707-MBS
    v.                            )
                                  )  **AMENDED COMPLAINT**
NORFOLK SOUTHERN RAILWAY          )
COMPANY,                          )
                                  )
    Defendant.                    )
_____  )

    The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this amended complaint and alleges as follows:

### NATURE OF THE ACTION

    1.    This is a civil action brought against the Norfolk Southern Railway Company ("Defendant") seeking injunctive relief and assessment of civil penalties for violations of the Clean Water Act, 33 U.S.C. §§ 1251–1387 ("CWA"), for the discharge of chlorine and oil into navigable waters of the United States, and of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601–9675(c) ("CERCLA") for failure to immediately notify the National Response Center of a reportable release of chlorine.

### JURISDICTION, AUTHORITY AND VENUE

    2.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1355; Sections 309(b), 311(b)(7)(E) and 311(n) of the CWA, 33 U.S.C. §§ 1319(b), 1321(b)(7)(E) and 311(n); and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b).

3. Authority to bring this action is vested in the United States Department of Justice by Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1395(a); Sections 309(b) and 311(b)(7)(E) of the CWA, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E); and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because Defendant does business in this District and the alleged violations occurred in this District.

**DEFENDANT**

5. Defendant Norfolk Southern Railway Company is a corporation organized and existing under the laws of the Commonwealth of Virginia. Defendant is a subsidiary of the Norfolk Southern Corporation.

**STATUTORY BACKGROUND**

6. Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), prohibits the discharge of oil or hazardous substances into or upon the navigable waters of the United States or adjoining shorelines in such quantities as the President determines may be harmful to the public health or welfare or the environment of the United States.

7. Pursuant to Sections 311(b)(2)(A) and (b)(4) of the CWA, 33 U.S.C. §§ 1321(b)(2)(A) and (b)(4), EPA, acting through its delegated authority under Executive Order No. 11735, 38 Fed. Reg. 21243 (Aug. 7, 1973), has determined by regulation that chlorine is a hazardous substance with a reportable quantity of 10 pounds for purposes of Section 311 of the CWA. 40 C.F.R. §§ 116.4 and 117.3.

8. Pursuant to Section 311(b)(4) of the CWA, 33 U.S.C. § 1321(b)(4), EPA, acting through its delegated authority under Executive Order No. 11735, 38 Fed. Reg. 21243 (Aug. 7, 1973), has determined by regulation that the quantities of oil that may be harmful to the public health or welfare or the environment of the United States include discharges of oil that, inter alia, cause a film or sheen upon or discoloration of the surface of the water. 40 C.F.R. § 110.3.

9. Pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), and the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note,

as implemented at 69 Fed. Reg. 7,121 (Feb. 13, 2004), any person who is the owner or operator of an onshore facility from which oil or a hazardous substance is discharged in violation of Section 311(b)(3) of the CWA shall be subject to a civil penalty of up to $32,500 per day or up to $1,100 per barrel of oil or unit of reportable quantity of a hazardous substance discharged. 40 C.F.R. § 19.

10. Pursuant to Section 311(b)(7)(D) of the CWA, 33 U.S.C. § 1321(b)(7)(D), and the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as implemented at 69 Fed. Reg. 7,121 (Feb. 13, 2004), the owner or operator of an onshore facility whose gross negligence or wilful misconduct results in a violation of Section 311(b)(3) of the CWA shall be subject to a civil penalty of not less than $130,000 and not more than $4,300 per barrel of oil or unit of reportable quantity of a hazardous substance discharged. 40 C.F.R. § 19.

11. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant by any person except as in compliance with the CWA. Section 502 of the CWA defines "discharge of a pollutant" as any addition of any pollutant to navigable waters from any point source, 33 U.S.C. § 1362(12); "point source" as any discernible, confined and discrete conveyance, including containers and rolling stock, from which pollutants are or may be discharged, 33 U.S.C. § 1362(14); and "navigable waters" as the waters of the United States, 33 U.S.C. § 1362(7).

12. Pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), EPA is authorized to bring a civil action seeking appropriate injunctive relief and civil penalties for violations of Section 301 of the CWA.

13. Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), requires any person in charge of an onshore facility, as soon as he has knowledge of a release of a hazardous substance from that facility in reportable quantities, to immediately notify the National Response Center of that release.

14. Pursuant to Section 109(c)(1) of CERCLA, 42 U.S.C. § 9609(c)(1), and the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as

implemented at 69 Fed. Reg. 7,121 (Feb. 13, 2004), a civil penalty of up to $32,500 per day for violations occurring on or after March 16, 2004, may be assessed for each violation of Section 103(a) of CERCLA. 40 C.F.R. § 19.

**GENERAL ALLEGATIONS**

15. Defendant owns and operates a freight railroad, with approximately 21,200 miles of track in 22 eastern states, the District of Columbia, and Canada. Defendant also owns and/or operates trains, including engines and tank cars, that operate on its track.

16. Defendant owns and operates tracks that pass through Graniteville, South Carolina. Defendant also owns and/or operates trains, including engines and tank cars, that operate on the portions of its track that pass through Graniteville. Graniteville is located within the unsignaled or "dark" territory of Defendant's rail system, in which tracks are equipped with no automated warning system that would notify engineers of upcoming track conditions such as improperly lined switches.

17. At 2:39 a.m. on January 6, 2005, Norfolk Southern Train 192 ("Train 192") was traveling through Graniteville at approximately 47 miles per hour when it encountered an improperly lined switch that diverted it from the main line onto an industrial siding, where the train collided head on with Norfolk Southern Train P-22 ("Train P-22"), which was parked and unoccupied at the time of the collision.

18. The collision derailed both of Train 192's locomotives as well as 16 of its 42 freight cars. Among the derailed cars were three tank cars containing pressurized chlorine in a liquid state.

19. One of the tank cars containing chlorine was breached during the accident. The breached tank car discharged chlorine.

20. Approximately 60 tons (120,000 pounds) of chlorine discharged from the breached tank car.

21. Chlorine discharged from the breached tank car in a liquid and/or gaseous state. Upon discharge from the breached tank car, the chlorine rapidly assumed a gaseous state.

22.  Chlorine gas is heavier than air.  Accordingly, the discharged chlorine formed a cloud that settled over the derailment site and surrounding areas of lower elevation.

23.  Chlorine discharged from the breached tank car killed Train 192's engineer and eight other people in surrounding buildings and homes.  The discharged chlorine also caused hundreds of cases of respiratory distress and required the evacuation of over 5,400 people living or working in the vicinity of the derailment site.

24.  Chlorine discharged from the breached tank car settled upon and was absorbed into Horse Creek, its tributaries and their adjoining shorelines, in quantities sufficient to injure and kill fish (some of which were visibly bleached), other aquatic life and vegetation, and significantly lower pH levels in receiving waters.

25.  In November 2005, EPA issued an Information Request to Defendant under Sections 308 and 311 of the CWA.  In its March 13, 2006 response, Defendant addressed the presence of chlorine in Horse Creek, explaining as follows:

> Monitoring of surface water conditions were determined to be warranted based on a strong odor SCDHEC [South Carolina Department of Health and Environmental Control] had noted in the area of the creek and initial SCDHEC water sample results indicating a lower than normal pH and elevated chlorine.  Elevated chlorine air monitoring readings were also detected near Horse Creek by [Defendant's contractor] CTEH.  CTEH initiated a water monitoring program in the early morning of January 8 for chlorine and pH.  Initial inspection of the storm water outfall into the creek and 100 yards downstream on that day evidenced odor and detectable concentrations of chlorine in the air.  Respiratory protection was required in the vicinity of the storm water outfall behind the plant.  Due to the continuing emergency response to the air release and concern for the safety of personnel entering the work zone, water sampling was limited, but test strips indicated elevated chlorine and low pH values at that point in Horse Creek.  It should be noted that these field measurements were qualitative, not quantitative, and cannot be relied upon to determine reportable quantity.  Several dead fish with an appearance consistent with chlorine exposure were noted in the creek.

(Response to November 23, 2005 Information Request, p. 8).

26.  The United States does not know at this time the precise geographical extent reached by the chlorine gas cloud discharged from the breached tank car.  However, chlorine gas reached waters downstream of the point where Horse Creek flows into Flat Rock Pond, and upstream of Langley Pond, and chlorine entered waters within

5

this area.  These waters include (but may not be limited to) Horse Creek, Flat Rock Pond, Bridge Creek Pond, and the canal draining Bridge Creek Pond.

27.     During the collision the fuel tank on Train 192's second engine ruptured and the fuel tank on Train P-22's engine was punctured by debris.  The two breached fuel tanks discharged between 2,500 and 3,500 gallons of diesel fuel.  Discharged diesel fuel absorbed into soils and surfaces surrounding the derailment site.

28.     On January 15, 2005, a rainbow sheen was observed by Defendant on the surface of water flowing from a storm drain into Horse Creek.  This sheen on the water was caused by diesel fuel discharged from Defendant's engines following the derailment, which was flushed into Horse Creek when Defendant broke a water line while conducting remedial activities related to the derailment.

29.     In its March 13, 2006 response to EPA's Information Request, Defendant addressed the discharge of diesel fuel, explaining as follows:

> The amount of diesel fuel spilled from the fuel tanks of locomotive #6653 and 4622 onto the ground as a result of the accident has been estimated by the railroad to be between 2,500 and 3,500 gallons. . . . [A]t the time of the incident (and for nine days thereafter) no oil or oil sheen was observed in any storm drain or in the water until the January 15 rainbow sheen incident was observed as described below. . . .
>
> Earlier that same day [January 15, 2005] a slight rainbow sheen was observed at a storm drain outfall located upstream of Station 6 (behind the plant's above ground storage tanks and where the road crosses the creek over a bridge).  Notice of the sheen was given immediately to agency representatives present on location.  This sheen was tracked back to another smaller water line break which had occurred the day before during the equipment operation along the industrial track approximately 100 feet northwest of the central excavation and which had drained northwest through the small spill area at the grade crossing.  It was determined that this water line break had moved a small amount of fuel impacted water in the ground to an old storm drain through subsurface infiltration (not through a surface inlet), resulting in a small rainbow sheen reaching the creek at the above mentioned outfall. . . .  The sheen discharge to the creek was stopped by removal of the impacted soil at the site and repair of the water line.  (Response to November 23, 2005 Information Request, pp. 10-12).

30.     At all times pertinent to this action, Defendant was a "person" within the meaning of Sections 311(a)(7) and 502(5) of the CWA, 33 U.S.C. §§ 1321(a)(7) and 1362(5), and Section 101(21) of CERCLA, 33 U.S.C. § 9601(21).

31. At all times pertinent to this action, Defendant was the owner and/or operator of Trains 192 and P-22, including all engines and tank cars, within the meaning of Section 311(a)(6) of the CWA, 33 U.S.C. § 1321(a)(6).

32. At all times pertinent to this action the engines and tank cars of Trains 192 and P-22 were "onshore facilities" within the meaning of Section 311(a)(10) of the CWA, 33 U.S.C. § 1321(a)(10), and Section 101(18) of CERCLA, 42 U.S.C. § 9601(18), and "point sources" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

33. Horse Creek is a perennial water body, is habitat for fish and other aquatic life, and is used for fishing.

34. Horse Creek flows through the town of Graniteville, entering Flat Rock Pond to the north of the derailment site. Horse Creek continues from the southern end of Flat Rock Pond. Some water from Flat Rock Pond is diverted a short distance to Bridge Creek Pond, which drains to a canal (used for mill operations) that ultimately returns diverted water to Horse Creek. Horse Creek flows within approximately 1,000 feet of the derailment site. South of the derailment site, Horse Creek passes through Langley Pond, and from there flows to the Savannah River, which flows to the Atlantic Ocean.

35. Portions of Horse Creek, both upstream and downstream of the derailment site, were historically used for commercial purposes, including the transportation of timber, and to power water-driven turbines at mills located along Horse Creek.

36. Horse Creek, Flat Rock Pond, Bridge Creek Pond, and the canal draining Bridge Creek Pond are "navigable waters of the United States" within the meaning of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3); and "navigable waters" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

**FIRST CLAIM FOR RELIEF**
**(Discharge of Chlorine in Violation of Section 311(b)(3) of the CWA)**

37. Paragraphs 1 through 36 are realleged and incorporated herein by reference.

38. Chlorine is a "hazardous substance" within the meaning of Section 311 of the CWA. 33 U.S.C. § 1321(a)(14); 40 C.F.R. § 116.4.

39. Defendant's release of chlorine from Train 192's breached tank car, which reached Horse Creek and other waters as alleged above, was a "discharge" within the meaning of Section 311(a)(2) of the CWA, 33 U.S.C. § 1321(a)(2).

40. The United States has not yet determined the maximum quantity of chlorine that reached navigable waters and adjoining shorelines, but on January 6, 2005, more than 10 pounds of chlorine reached and was absorbed into navigable waters including, but not necessarily limited to, Horse Creek, Flat Rock Pond, Bridge Creek Pond, and the canal draining Bridge Creek Pond.

41. Defendant discharged chlorine in excess of the reportable quantity of 10 pounds into or upon navigable waters and adjoining shorelines in violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3). Defendant is accordingly liable for a civil penalty of up to $32,500 per day of violation or an amount up to $1,100 per unit of reportable quantity of chlorine discharged. 33 U.S.C. § 1321(b)(7)(A). To the extent that Defendant's discharge of chlorine was the result of gross negligence or wilful misconduct, Defendant is liable for a civil penalty of not less than $130,000 and not more than $4,300 per unit of reportable quantity of chlorine discharged. 33 U.S.C. § 1321(b)(7)(D).

**SECOND CLAIM FOR RELIEF**
**(Discharge of Oil in Violation of Section 311(b)(3) of the CWA)**

42. Paragraphs 1 through 36 are realleged and incorporated herein by reference.

43. Diesel fuel is "oil" within the meaning of CWA Section 311(a)(1), 33 U.S.C. § 1321(a)(1).

44. The release of diesel fuel from the engines of Train 192 and P-22 that occurred as a result of the collision on January 6, 2005 was a "discharge" within the meaning of Section 311(a)(2) of the CWA, 33 U.S.C. § 1321(a)(2).

45.    A sheen was observed by Defendant on the surface of Horse Creek on January 15, 2005.  The sheen was caused by diesel fuel discharged as a result of the collision.  The diesel fuel was flushed from fuel soaked soil in the vicinity of the derailment site and into Horse Creek when Defendant broke a water line while conducting remedial activities related to the derailment.

46.    Defendant discharged oil into or upon Horse Creek in a quantity sufficient to cause a sheen upon or discoloration of the surface of the water in violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).  Defendant is accordingly liable for a civil penalty of up to $32,500 per day of violation or an amount up to $1,100 per barrel of oil discharged.  33 U.S.C. § 1321(b)(7)(A).  To the extent that Defendant's discharge of oil was the result of gross negligence or wilful misconduct, Defendant is liable for a civil penalty of not less than $130,000 and not more than $4,300 per barrel of oil discharged.  33 U.S.C. § 1321(b)(7)(D).

**THIRD CLAIM FOR RELIEF**
**(Discharge of Pollutants in Violation of Section 301(a) of the CWA)**

47.    Paragraphs 1 through 36 are realleged and incorporated herein by reference.

48.    Chlorine is a "pollutant" within the meaning of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

49.    Defendant's release of chlorine from Train 192's breached tank car, which reached Horse Creek and other waters as alleged above, was a "discharge of [a] pollutant" within the meaning of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

50.    Diesel fuel is a "pollutant" within the meaning of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

51.    Defendant's release of diesel fuel from the engines of Train 192 and P-22, which reached Horse Creek as alleged above, was a "discharge of [a] pollutant" within the meaning of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

52.    Defendant discharged chlorine and diesel fuel from point sources into navigable waters in violation of Section 301(a) of the CWA, 33 U.S.C. 1311(a).

Defendant is accordingly subject to appropriate injunctive relief pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

### FOURTH CLAIM FOR RELIEF
**(Failure to Immediately Notify the National Response Center of a Release of Chlorine in Reportable Quantities in Violation of Section 103(a) of CERCLA)**

53. Paragraphs 1 through 36 are realleged and incorporated herein by reference.

54. At all times pertinent to this action Defendant was a "person in charge" of Train 192 and its tank cars within the meaning of Section 103(a) of CERCLA, 42 U.S.C. § 9603(a).

55. Chlorine is a hazardous substance with a reportable quantity of 10 pounds for purposes of Section 103(a) of CERCLA. 40 C.F.R. § 302.4.

56. The discharge of chlorine from Train 192's breached tank car was a "release," as defined in Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), in excess of 10 pounds.

57. Defendant knew, shortly after the 2:39 a.m. collision of Train 192 with Train P-22 on January 6, 2005, that more than 10 pounds of chlorine had been released.

58. Defendant did not notify the National Response Center of the release until approximately 4 a.m. on January 6, 2005.

59. Defendant did not immediately notify the National Response Center as soon as it had knowledge that a release of chlorine in excess of 10 pounds from one of Train 192's tank cars had occurred, in violation of Section 103(a) of CERCLA, 42 U.S.C. § 9603(a). Defendant is accordingly liable for a civil penalty of up to $32,500 per day of violation. 42 U.S.C. § 9609(c)(1).

### PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations set forth above, the United States of America requests that this Court:

1. Impose civil penalties on Defendant, pursuant to Section 311(b)(7) of the CWA, in an amount of up to $1,100 per unit of reportable quantity of chlorine discharged,

and to the extent the discharge was the result of gross negligence or wilful misconduct by the Defendant, of up to $4,300 per unit of reportable quantity of chlorine discharged;

    2.    Impose civil penalties on Defendant, pursuant to Section 311(b)(7) of the CWA, in an amount of up to $1,100 per barrel of oil discharged, and to the extent the discharge was the result of gross negligence or wilful misconduct by the Defendant, of up to $4,300 per barrel of oil discharged;

    3.    Impose appropriate injunctive relief pursuant to Section 309(b) of the CWA as may be necessary to prevent, detect and mitigate further discharges in violation of Section 301(a) of the CWA;

    4.    Impose a civil penalty on Defendant in an amount of up to $32,500 per day of violation for failure to immediately notify the National Response Center of a reportable release of chlorine in violation of Section 103(a) of CERCLA; and

    5.    Grant such other and further relief as the Court deems just and proper.

                        Respectfully submitted,

                        W. WALTER WILKINS  
                        United States Attorney  
                        District of South Carolina

                        S/ R. Emery Clark  
                        _____  
                        R. EMERY CLARK (Bar No. 1183)  
                        Assistant United States Attorney  
                        District of South Carolina  
                        1441 Main Street, Suite 500  
                        Columbia, S.C.  29201  
                        Phone:  803-929-3085  
                        Fax:    803-252-2759  
                        Email:  emery.clark@usdoj.gov

March 9, 2009

```
                                        JOHN C. CRUDEN
                                        Acting Assistant Attorney General
                                        Environment and Natural Resources Division
                                        United States Department of Justice


                                        PATRICIA L. HURST
                                        DAVIS H. FORSYTHE
                                        Trial Attorneys
                                        Environmental Enforcement Section
                                        Environment and Natural Resources Division
                                        United States Department of Justice
                                        P.O. Box 7611
                                        Washington, D.C. 20044
                                        (202) 616-6528
```

OF COUNSEL:

JOAN REDLEAF DURBIN
Senior Attorney
U.S. Environmental Protection Agency, Region 4
61 Forsyth Street, S.W.
Atlanta, GA 30303


CHERYL T. ROSE
Senior Attorney
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460